ALMONT R. PENNEY, and another,

*vs.*

NEWTON A. EARLE, and another.

Androscoggin.    Opinion January 17, 1895.

*Sales. Execution. Place. Officer. Mortgage. R. S., c. 91, § 1.*

The court adheres to the rule that execution sales of personal property shall be what they purport to be, public, with the property exposed for examination, so that bidders may observe and appreciate the qualities of the property offered for sale.

*Held;* that a sale on execution was void by reason of non-compliance with the law, it appearing that the officer who attempted to make the sale, being other than the one who made the attachment, never saw the property; never had the key to the building in which it was contained; that he took no possession of the property other than by the plaintiffs' attorney telling him he had possession of it; that he advertised the sale at the attorney's office some distance from where the property was located; and that the property was not exposed for sale, for examination or inspection; was sold in a lump and never delivered to the plaintiffs, who were the purchasers, other than by their retaining the key.

ON REPORT.

This was an action of replevin of an engine and boiler to which the plaintiffs claimed title as purchasers at an execution sale and the defendants, who were mortgagees. The judgment debtors on the twenty-fifth day of February, 1890, mortgaged the property replevied to the defendant Earle and one Edgar W. Salisbury. Both mortgagees resided in Rhode Island. Harris, one of the judgment debtors, then resided in Minot, Androscoggin county; and Lee, the other judgment debtor, always resided in Rhode Island. The mortgaged property was then in Minot, and always

remained in the same building where it was at the time of the mortgage up to the time of the sheriff's sale. The mortgage was recorded October 19, 1892, in the town records of the town of Minot. At that time, Harris had removed to and resided in the town of Poland. The mortgage was also recorded June 14, 1893, in the town records of the town of Mechanic Falls. In the meantime, in February, 1893, that portion of Minot in which Harris lived, when the mortgage was given and in which the property was located and that portion of Poland in which Harris lived on June 14th, 1893, had become incorporated within the town of Mechanic Falls. The judgment debtors conveyed absolutely to the defendant Earle and Salisbury, June 14, 1893; and the grantees took possession of the property prior to the execution sale and removed it to Mr. Earle's place on the Poland side of the river.

The plaintiffs' claim was, that the property was attached December 1, 1892, on a writ in favor of J. W. Penney & Sons against Harris and Lee, the mortgagors. This attachment was made by filing an attested copy, etc., with the town clerk of Minot. Execution was issued in said action June 5, 1893. The date of the judgment was May 11, 1893, and it appeared that on the tenth day of June, which was within thirty days after the rendition of judgment, the officer returned that he seized the property replevied as the property of the within named Ernest A. Harris and Charles F. Lee; that he gave notice on the nineteenth day of June of a sale to be had on the twenty-second day of June, and that on the twenty-second day of June the articles replevied were sold to the plaintiffs for one gross sum by the officer and the proceeds applied to the execution.

It appeared that on the tenth day of June the officer gave notice of a sale of the same property to be had on the nineteenth day of June, and in that notice described the parties as Almont R. Penney and Samuel R. Penney as creditors and Ernest A. Harris as debtor. The name of Lee did not appear in that notice. The defendant, Earle, by his pleadings denied the title of plaintiffs and claimed title in himself and Salisbury.

Other facts relating to the sale of the property on the execution are stated in the opinion.

*F. O. Purington*, for plaintiffs.

At time of attachment, December 1, 1892, Harris, one of defendants, in execution, resided in Poland, Maine, and had since May, 1890, when he removed from Minot, and the mortgage under which defendants claim was never recorded in Poland, but was recorded at Mechanic Falls, June 14, 1893, four days subsequent to seizure on execution. The plaintiffs are entitled to judgment unless there has been some irregularity in their proceedings to vitiate them, or the mortgagees' title is better.

The mortgage bears date February 25, 1890, and was first recorded October 19, 1892, in a town (Minot) other than that in which the mortgagor then (at time of record) resided. R. S., c. 91, § 1.

The question is, where shall a mortgage be recorded, the record of which is deferred two years and eight months from its execution and two years and four months, at least, after mortgagor has changed his residence. The language of the statute "in which the mortgagor resides" must mean where he resides at time of record. The mortgage isn't a mortgage as to third parties until recorded. It would have been easy, had the legislature wished, to have added the words "at the time of the execution thereof," as the New York statute reads. "Resides," by any fair interpretation must mean place of residence at time of record. The New York case cited in Jones on Chattel Mortgages is based on the New York statute and is not applicable to the present case. In *Witham* v. *Butterfield*, 6 Cush. 217, the court expresses a doubt as to the proper place of record in a case parallel to the one under consideration, the Massachusetts statute being like our own in this particular.

Where one of two innocent people must suffer, the one guilty of negligence shall be the one, is applicable here, and the mortgagees, having by their negligence misled the plaintiffs, must bear the consequences. Presumably, had the mortgagees recorded their mortgage seasonably, the plaintiffs could have protected themselves by refusing credit to the debtors (mortgagors).

Certainly so large a mortgage, if recorded, would have caused plaintiffs to have taken very different steps. Will the court say that when one examines records two years and more after a debtor has left town, he must still continue to watch the records of the debtor's former residence, and may not thereafter be safe in examining only the records of the town to which the debtor has removed?

The case shows that the sale was properly advertised. There is no suggestion of fraud or that any unfair means were employed. Chattels it appears had been in same place a long time, easy of access, near place of sale. The law does not require formality for formality's sake, but that justice shall be done to all. No one made request to see the chattels. The sale was open and fair and was analogous to the sale in *Phillips* v. *Brown*, 74 Maine, 549. The language in *Bergin* v. *Hayward*, 102 Mass. pp. 426 and 427, applies here and is a full answer to the further objection suggested by defendants that officer should have sold each chattel separately.

*Jesse M. Libby, A. R. Savage, and H. W. Oakes*, with him, for defendants.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

HASKELL, J. Replevin of an engine and boiler. The plaintiffs claim title under sale on execution, by virtue of a seizure made June 10, 1893. The defendants, by virtue of a mortgage properly recorded June 14, 1893, but dated February 25, 1890. The case is presented on the issue of property in the defendants and not in the plaintiffs. They can recover only upon proof of title. If the sale was void by reason of noncompliance with law, they must fail.

It appears that the property was supposed to have been attached on the writ and put into the possession of plaintiffs' attorney by giving him a key to the building in which the property was contained, one of the debtors retaining another key to the same.

The officer who attempted the sale on execution was not the same officer who is supposed to have made the attachment. He testifies, in substance, that he never saw the property, never had the key to the building, that he took no. possession of the property other than by the plaintiffs' attorney telling him that he had possession of it. He advertised the sale at the attorney's office, some distance from where the property was located. The property was not exposed for sale, for examination or inspection, was sold in a lump, and never delivered to the plaintiffs, who were the purchasers, other than by their retaining the key.

"The general rule is, that the sale of personal property by an officer on execution must be had where the property is situated, or so near, that those present at the sale can examine it." *Lawry* v. *Ellis*, 85 Maine, 500. There may be exceptions, as in *Phillips* v. *Brown*, 74 Maine, 549. There a barn was sold during "an inclement season of the year." This sale was in June. There the property was itself open to inspection by all observers who might go near it. Here it was locked up in a building where no one might see it without its being exposed to view. It was not exposed, nor offered to be exposed, so far as the case shows. It should have been. No good reason appears why the sale was not had on the premises. It is best to hold to a rigorous rule, that such sales shall be what they purport to be, public, with the property exposed for examination, so that bidders may observe and appreciate the qualities of the property offered.

Other questions are presented that are unnecessary to consider. The defendants may have mistaken the proper place for recording their mortgage in the first instance, but it appears to have been an honest mortgage, and the equities are strongly in their favor. *

*Judgment for defendants and for return.*

---

* By an act approved February 21, 1895, amending R. S., c. 91, § 1, it is provided that chattel mortgages shall be recorded in the town where the mortgagor resides "when the mortgage is given." Stat. 1895, c. 39.　　REPORTER OF DECISIONS.